UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EDWIN GEORGE DUFFUS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00268-SDN |
| | ) | |
| MAINEHEALTH, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTIONS TO AMEND**

Plaintiff moves for leave to file an amended complaint, seeking to assert additional claims. (Pl's Motion, ECF No. 38.) Defendant opposes the motion.[1] (Def's Opposition, ECF No. 48.) Defendant moves for leave to file an amended answer, seeking to assert an additional affirmative defense. (Def's Motion, ECF No. 42.) Plaintiff opposes the motion. (Pl's Opposition, ECF No. 49.)

After considering the procedural history of this matter, the proposed amended pleadings, the parties' arguments, and the applicable law, the Court grants both motions.

**FACTUAL BACKGROUND**[2]

Plaintiff is a 67-year-old resident of Jamacia who was admitted to the United States in June 2022 with a temporary (H2-A) work visa; he is employed as a farm worker in

[1] As explained in footnote 3, although there are multiple defendants named in the operative complaint, for clarity, the Court refers to the named defendants collectively as Defendant.

[2] The following facts are drawn from Plaintiff's proposed Revised First Amended complaint (Amended Complaint, ECF No. 55-1), and are accepted as true under the legal standard applicable at this stage of the process. For present purposes, this decision summarizes the factual allegations most pertinent to the two claims that Plaintiff seeks to add by way of the Amended Complaint.

Warren, Maine. (Amended Complaint ¶ 5.) Plaintiff is "Black, of African Caribbean and Jamaican ancestry, and of Jamaican national origin." (*Id.* ¶ 6.) He currently resides in Jamaica. (*Id.* ¶ 7.)

Defendant MaineHealth is an integrated health care system doing business as Defendant Maine Medical Center (MMC), a non-profit tertiary-care hospital located in Portland, Maine. (*Id.* ¶¶ 10-11.)[3] Defendant operates an emergency department at MMC. (*Id.* ¶ 12.) Defendant participates in the federal Medicare Program, receives Medicare payments from the federal government, and is a party to Medicare Agreements requiring compliance with Centers for Medicare and Medicaid Services Conditions of Participation. (*Id.* ¶¶ 13-14.) Defendant has also entered into an agreement with the Secretary of Health and Human Services under 42 U.S.C. § 1395cc. (*Id.* ¶ 15.)

On July 17, 2022, Plaintiff suffered a stroke and was taken to a nearby hospital. (*Id.* ¶¶ 16-17.) Because that hospital did not have facilities adequate to treat Plaintiff, an emergency room physician contacted MMC and requested treatment on Plaintiff's behalf. (*Id.* ¶ 18.) After MMC agreed to accept Plaintiff as a patient, he was transported there by helicopter. (*Id.* ¶¶ 19-20.) MMC admitted Plaintiff to its Neurocritical Care Unit and offered him medical treatment. (*Id.* ¶¶ 21, 23.) In return, Plaintiff agreed to be responsible for payment to Defendant for his treatment. (*Id.* ¶ 23.)

[3] MaineHealth and MMC are hereinafter jointly referred to as Defendant. References to MMC are to that specific facility.

Defendant's records reflect that Plaintiff had suffered an intercerebral hemorrhage (ICH) caused by severe hypertension. (*Id.* ¶ 24.) Defendant's staff also diagnosed Plaintiff with multiple conditions resulting from the ICH, including right side hemiparesis, or muscle weakness leading to paralysis; expressive aphasia, or a reduced ability to communicate verbally; hypomimia, or reduced facial expression; hypophonia, or a reduction in voice volume and clarity; dysarthria, a speech disorder resulting in slurred or slow speech; decreased balance; and decreased activity tolerance. (*Id.* ¶ 25.)

Plaintiff was an inpatient at MMC from July 17, 2022 until his discharge at 2:00 a.m. on July 29, 2022. (*Id.* ¶ 29.) During his hospitalization, care providers attempted to control Plaintiff's blood pressure with medication, and he received physical, occupational, and speech-language therapy to treat the conditions caused by the ICH. (*Id.* ¶¶ 31, 36.)

Throughout his hospitalization, MMC physical therapists recommended that Plaintiff receive acute rehabilitation and be discharged to an inpatient rehabilitation facility. (*Id.* ¶¶ 41-45.) Defendant's staff nevertheless decided to repatriate Plaintiff to Jamaica by plane without arranging for his continued treatment at an acute rehabilitation center in Jamaica or making other appropriate plans for his continued care after his discharge. (*Id.* ¶¶ 50-55.) Defendant did not evaluate Plaintiff's likely need for appropriate post-hospital services in Jamaica, determine the availability of such services, or determine Plaintiff's ability to access any such services. (*Id.* ¶¶ 106-08.)

At the time of his discharge, Plaintiff was unable to travel without substantial assistance, had significant difficulty speaking, and was unable to move himself, use an airline toilet, feed himself, or take his medications. (*Id.* ¶ 56.) Because of his limitations

at the time of discharge, Plaintiff was at elevated risk of a fall and of improperly taking his medications, making it likely that his condition would deteriorate after discharge. (*Id.* ¶¶ 57-59.) When he arrived in Jamaica, Plaintiff had not eaten since the night before and had not received assistance using the bathroom. (*Id.* ¶ 119.) His family was not informed about the timeline for his discharge or when he was scheduled to arrive in Jamaica. (*Id.* ¶ 120.)

During his hospitalization, Defendant presented Plaintiff with a written "Consent to Treatment" form that Plaintiff signed. (*Id.* ¶ 62.) The form provides that Plaintiff had the right to informed consent, to maintain the confidentiality of his medical information, and to participate in decisions regarding his treatment and his discharge. (*Id.* ¶¶ 63-64, 76.) Defendant's policies also provide that patients have the right to "be treated with respect," "be informed about" their care, and "make decisions about" their care. (*Id.* ¶ 65.)

Plaintiff asserts that Defendant denied him rights conferred by the parties' contract and applicable federal regulations—including the rights enumerated in Defendant's policies and in the Consent to Treatment form—and in so doing denied him the benefits of Defendant's health program or activity. (*See id.* ¶¶ 60-84.) According to Plaintiff, Defendant's staff had difficulty communicating with Plaintiff, who apparently spoke some English but needed an interpreter. (*Id.* ¶ 85.) Moreover, due to his expressive aphasia, as diagnosed by Defendant's staff, Plaintiff could not effectively verbally communicate his desires for his care. (*Id.* ¶ 86.) Despite Plaintiff's difficulty in communicating, Defendant did not provide Plaintiff with an interpreter, and did not afford him the opportunity to appoint a proxy for communication. (*Id.* ¶¶ 85-87.)

Plaintiff maintains that Defendant also ignored the wishes of his family members regarding his discharge. (*Id.* ¶¶ 88-93.) Specifically, Defendant disregarded Plaintiff's wife's request for a meeting with his doctors before his discharge. (*Id.* ¶ 121.) In the days before Plaintiff's discharge, Plaintiff's wife and brother also communicated with Defendant's staff and advised that Plaintiff should not be sent home to Jamacia, and that he should stay in the United States to pursue physical therapy. (*Id.* ¶¶ 89, 92.)

During Plaintiff's hospitalization, Defendant communicated with a representative of the Jamaica Central Labour Organisation (JCLO), an agency of the Jamaican government charged with facilitating the employment of H-2A workers in the United States and monitoring their welfare while in the United States. (*Id.* ¶¶ 95-96.) The communications included a social worker employed by Defendant enlisting the aid of JCLO in obtaining Plaintiff's paystubs to determine his options for health care coverage. (*Id.* ¶ 97.) Defendant also sent Plaintiff's medical records to a JCLO representative without his prior consent. (*Id.* ¶¶ 102-104.) Defendant's staff noted in Plaintiff's medical file that JCLO would "be able to pay for the transport home to Jamaica" and that a JCLO representative would be accompanying Plaintiff on a flight home to Jamaica. (*Id.* ¶¶ 98-99.) Plaintiff claims that Defendant treated JCLO as his proxy decisionmaker without his consent. (*Id.* ¶ 100.)

Plaintiff alleges that he was eligible to apply for health insurance under the Patient Protection and Affordable Care Act (ACA), but did not know he was eligible. (*Id.* ¶¶ 110-111.) Defendant did not inform Plaintiff that he was eligible for ACA coverage or offer to assist him in obtaining health insurance under the ACA. (*Id.* ¶ 111.)

In July 2022, Dr. Demetri Blanas, Medical Director of the Maine Mobile Health Program (MMHP), a health center that provides services primarily to migrant farm workers in Maine, made several attempts to contact Defendant's staff to discuss whether Plaintiff's discharge was medically appropriate and to offer MMHP's help in securing financial support for Plaintiff, including insurance coverage under the ACA. (*Id.* ¶¶ 113, 114.) Defendant's staff rebuffed Dr. Blanas' efforts. (*Id.* ¶ 115.)

Defendant's staff noted in his medical records that Plaintiff was "Black or African" and that he was "in Maine as a laborer," "migrant laborer,' "or migrant worker." (*Id.* ¶ 126.) On the day of his admission, a social worker employed by Defendant wrote that Plaintiff's insurance coverage eligibility was unclear "given patient is from Jamaica and in the US working." (*Id.* ¶ 127.) At times, Defendant's staff "indicated that [Plaintiff] needed to be discharged because he lacked health insurance and could not obtain health insurance." (*Id.* ¶ 132.) Defendant's staff also wrote other notes in Plaintiff's file suggesting Plaintiff could not apply for or obtain health insurance because Defendant had already decided to discharge him to Jamaica. (*Id.* ¶¶ 135-36.) On July 25, 2022, a doctor employed by Defendant described Plaintiff as a "[m]igrant worker from Jamaica" and wrote that he was "medically ready to travel" in an airplane. (*Id.* ¶ 128.)

Defendant's staff attempted to inform Plaintiff that he would soon be discharged to Jamaica. (*Id.* ¶ 140.) Plaintiff did not understand the plan: he did not know whether he would be discharged back to the blueberry farm in Warren or home to Jamaica. (*Id.* ¶ 141.) Plaintiff could not effectively communicate questions about or wishes for his discharge due to his expressive aphasia. (*Id.* ¶ 142.) At 2:00 a.m. on July 29, 2022, Defendant

supplied Plaintiff with a wheelchair and told him that he had to leave the hospital. (*Id.* ¶ 143.) Defendant's staff physically put Plaintiff in the wheelchair and wheeled him out of MMC, with the assistance of two JCLO representatives. (*Id.* ¶ 145.) Plaintiff was transported to the airport, where the two JCLO representatives brought Plaintiff inside and then placed Plaintiff on a plane bound for Jamaica. (*Id.* ¶¶ 146-47.)

Plaintiff claims that because of his race, ancestry, and national origin, Defendant used "forced repatriation as an illegal means to bypass Defendant's obligation" to provide him with an appropriate discharge. (*Id.* ¶ 129.) Plaintiff claims that Defendant was similarly motivated in its "numerous violations" of his contractual and statutory rights. (*Id.* ¶ 130.) He asserts that Defendant discriminated against him and subjected him to disparate treatment in his medical care and discharge by failing to offer him the treatment that Defendant, by contract, policy, and practice, afforded to other patients. (*Id.* ¶¶ 186, 194.)

## Procedural History

Plaintiff commenced this action in July 2024, alleging that Defendant violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, when MMC discharged him without first having stabilized his emergency medical condition. After the Court denied Defendant's motion to dismiss, the Court issued and later amended a scheduling order setting deadlines for, among other things, the amendment of the pleadings.

Before the deadline for the parties to amend the pleadings, each party filed a motion to amend the party's pleading. Plaintiff seeks to amend the complaint to add claims of

discrimination in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 18116(a) (the ACA).[4] Defendant opposes Plaintiff's motion on grounds of futility, asserting that the alleged discrimination claims are not actionable. Defendant seeks to amend its answer to assert setoff as an affirmative defense which, if successful, "would reduce Plaintiff's recovery, if any, by the amount owed to Defendants for medical treatment." (Def's Motion at 2.) Plaintiff opposes Defendant's motion on grounds of futility, and for other reasons that do not require extensive discussion.[5]

## LEGAL STANDARD

Because the motions to amend were filed before the deadline set by the scheduling order, they are governed by Federal Rule of Civil Procedure 15(a)(2). *See United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 194 (1st Cir. 2015). Under that rule, a pleading may be amended with the court's leave, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may, however, be denied based on a finding of undue delay, bad faith, or lack of due diligence by the moving party, undue prejudice to the opposing party, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[4] Plaintiff also sought to add a claim of false imprisonment under Maine common law, but subsequently withdrew that claim by way of the Amended Complaint. (Pl's Reply at 16, ECF No. 55; Amended Complaint, ECF No. 55-1.)

[5] Among other things, Plaintiff claims that he would be unduly prejudiced if Defendant were permitted to add setoff as an affirmative defense after much discovery has been conducted. The Court is unpersuaded by the argument, as the evidence that Plaintiff would likely rely upon to counter the defense overlaps with the evidence that is otherwise relevant to the claims and defenses at issue in the case.

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" and would consequently be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, with enough factual detail to make the asserted claim plausible on its face." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quotation marks omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).

The plausibility assessment proceeds in two steps. First, the court identifies and ignores "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[.]" *Zenon v. Guzman*, 924 F.3d 611, 615 (1st Cir. 2019) (quotation marks omitted). Second, the court takes the remaining well-pleaded (i.e., non-conclusory, non-speculative) facts as true, and draws all reasonable inferences in the pleader's favor, evaluating plausibility in light of the context of the claims alleged. *Id.* at 615-16.

To make out a plausible claim, a complaint "need not plead facts sufficient to establish a *prima facie* case or allege every fact necessary to win at trial." *Carrero-Ojeda*

*v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014) (quotation marks and citations omitted). "That said, the elements of a *prima facie* case remain relevant to [the] plausibility assessment" as they comprise part of the background against which the assessment is made. *Id.*; *accord Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 652-53 (1st Cir. 2026). "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations" but instead whether the complaint is subject to dismissal because it fails, in the aggregate, to render plaintiff's claims plausible. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013). "There need not be a one-to-one relationship between any single allegation and a necessary element" of a claim. *Id.* "What counts is the 'cumulative effect of the [complaint's] factual allegations.'" *Id.* (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011)).

## DISCUSSION

### A. Plaintiff's Motion to Amend Complaint

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" *Id.* § 1981(a). The right to "make and enforce contracts" contemplated by the statute includes the "performance" of a contract and "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Rights protected by the statute "are protected against impairment by nongovernmental discrimination[.]" *Id.* § 1981(c).

To state a claim under § 1981, "a plaintiff must show that (1) [he] is a member of a racial minority; (2) the defendant discriminated against [him] on the basis of [his] race; and (3) the discrimination implicated one or more of the activities listed in the statute[.]" *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013). A plaintiff must also "plead and ultimately prove that, "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). The Supreme Court has held that § 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982).

Under the ACA, "an individual shall not, on the ground prohibited under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) . . . be denied the benefits of, or be subject to discrimination under, any health program or activity" that is receiving federal financial assistance. 42 U.S.C. § 18116(a). Title VI of the Civil Rights Act, in turn, prohibits discrimination on the ground of race, color, or national origin in any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. Like § 1981, Title VI applies only to "instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (quotation marks omitted).

Defendant contends that the proposed race-based discrimination claims fail because Plaintiff has not alleged any overt acts of discrimination, and that in the absence of any such allegations, a fact finder could not plausibly draw an inference of racial animus. (Def's Opposition at 5.) Defendant maintains that the amended complaint does not contain

factual allegations that link Defendant, or its employees, to any statements or actions that are overtly discriminatory.

The Court of Appeals for the First Circuit has indicated that the absence of "smoking gun" proof of discriminatory motive does not subject a discrimination claim to dismissal at the pleading stage. *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012) (noting that such proof is "rarely available, especially at the pleading stage"). A plaintiff is not required to "plead facts that demonstrate overt discrimination in order to survive a motion to dismiss[.]" *Fazeli v. Northbridge Stroudwater Lodge II LLC*, No. 2:20-cv-00350-JDL, 2021 WL 1759860, at *8 (D. Me. May 4, 2021). "For pleading purposes, circumstantial evidence often suffices to clarify a protean issue such as an actor's motive or intent." *Rodriguez-Reyes*, 711 F.3d at 56 (quotation marks omitted).

In the amended complaint, Plaintiff claims that race-based discrimination impaired his contractual relationship with Defendant, frustrating his equal enjoyment of the terms, privileges, benefits, and conditions of that relationship and Defendant's federally funded health program or activity as contemplated by 42 U.S.C. § 18116. More specifically, he alleges that his contractual relationship with Defendant, and Defendant's health program or activity, afforded him certain rights, including the right to informed consent, the right to the confidentiality of his medical information, the right to be treated with respect, and the right to participate in decisions regarding his treatment and discharge.

Plaintiff asserts that Defendant denied these rights during his hospitalization and discharge, in multiple ways, including by Defendant's failure to provide an interpreter or the opportunity to appoint a proxy for communications, ignoring his family members'

wishes for his treatment and discharge, treating JCLO as his decision-making proxy and disclosing his medical information to JCLO without his consent, refusing to communicate with Dr. Blanas regarding options for his continued care, and by repatriating him to Jamaica without assessing his post-discharge medical needs and whether those needs could be satisfied in Jamaica. Plaintiff further alleges that Defendant failed to afford him the treatment that Defendant, by contract, policy, and practice afforded to other patients, because of his race, color, and ancestry, and that its proffered justifications for these failures were pretextual.

Plaintiff's allegations are sufficient to allow a fact finder to infer a discriminatory motive. One of Defendant's physicians allegedly concluded that the disposition of Plaintiff's course of treatment was "repatriation to Jamaica"—a disposition allegedly not supported by Plaintiff's family members in Jamaica, of which disposition Plaintiff and his family members allegedly were not adequately apprised, and a disposition allegedly implemented without appropriate discharge planning efforts. Repatriation, which is the process of returning someone to their country of origin, is arguably not a decision based on what was most appropriate for Plaintiff's treatment. The alleged circumstances of Plaintiff's discharge—at 2:00 a.m., for transport to the airport, when Plaintiff was unable to ambulate independently or meaningfully communicate and without any plan for his follow-up care, and Defendant's alleged deviation from its standard practices could support a finding that Defendant treated Plaintiff differently than other patients. Given the repatriation directive, some of the entries in the record cited by Plaintiff, and Defendant's efforts to facilitate Plaintiff's transport to Jamaica, at this stage, Plaintiff has alleged

enough facts to support an inference that the different treatment was based on Plaintiff's race or national origin.

In sum, considered cumulatively, and with all reasonable inferences drawn in the light most favorable to Plaintiff as is required at this stage of the proceeding, the allegations in the amended complaint are sufficient to state a plausible discrimination claim under § 1981 and the ACA.

**B. Defendant's Motion to Amend Answer**

Preliminarily, the Court notes that because the Court is granting Plaintiff's motion to amend the complaint, Defendant's motion could be deemed moot. If Plaintiff files an amended complaint as authorized, Defendant will not need leave of court to assert setoff as a defense to Plaintiff's amended complaint. Defendant could include in its response to the amended complaint any defenses that Defendant in good faith believed were generated by the allegations. Nevertheless, because Plaintiff could possibly opt not to file an amended complaint, the Court will address the merits of Defendant's motion.

Setoff has been described as "a device allowing the convenient simplification of relations between mutually indebted parties." *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 99 F.3d 996, 1000 (1st Cir. 1993). The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). Plaintiff contends that Defendant cannot assert setoff as an affirmative defense because the parties do not currently owe each other money. He further avers that because his alleged debt to Defendant arose out of the same transaction that forms the basis

of his claims, Defendant should be required to assert setoff by way of compulsory counterclaim, rather than by way of affirmative defense, citing Rule 13(a) of the Federal Rules of Civil Procedure. Defendant contends that because Plaintiff's EMTALA claim centers on and asserts liability related to his discharge, not his treatment preceding discharge, Plaintiff's EMTALA claim arises out of one transaction (Plaintiff's discharge), and its defense of setoff arises out of a separate transaction (Plaintiff's care).

Defendant acknowledges that some authority supports the view that setoff may be asserted as a counterclaim or an affirmative defense, and that the distinction turns on the relief requested—whether a defendant seeks affirmative relief. *See, e.g., Jobin v. Arnot (In re M & L Bus. Mach. Co., Inc.)*, 178 B.R. 270, 272 (Bankr. D. Colo. 1995); *see also* 6 Wright & Miller's Federal Practice & Procedure § 1426 (3d ed. 2026 Update); Andrew M. Horton & Peggy L. McGehee, Maine Civil Remedies § 4-3(d)(3) (3d ed. 1996). Here, Defendant is not seeking to obtain a money judgment (i.e., affirmative relief) against Plaintiff. Rather, through setoff, Defendant seeks to reduce the amount of Plaintiff's recovery if Defendant is deemed liable to Plaintiff.

The Court is persuaded that because Defendant does not seek to recover on a claim for damages against Plaintiff, Defendant may assert setoff as an affirmative defense rather than as a counterclaim. In addition, because Defendant allegedly provided value to Plaintiff during his hospitalization for which Defendant was not compensated, the setoff defense is not futile.

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, the Court grants Plaintiff's motion to amend the complaint and Defendant's motion to amend its answer. Plaintiff shall file the amended complaint on or before September 28, 2026. If Plaintiff does not file an amended complaint, Defendant shall file its amended answer to the complaint on or before October 2, 2026.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of September, 2026.